IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BRIAN EASTER, | : |
| | : Case No. 2:17-cv-00197 |
| **Plaintiff,** | : |
| | : JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : Magistrate Judge Jolson |
| BEACON TRI-STATE STAFFING, INC., et al., | : |
| | : |
| | : |
| **Defendants.** | : |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion for Attorneys' Fees and Costs. (Doc. 125.) The parties have entered into a confidential settlement agreement requiring the Court to determine the appropriate amount of fees and costs to be awarded within a range of $137,500 and $337.500. For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion and awards **$337,500** in attorneys' fees and costs.

### II. BACKGROUND

On March 7, 2017, following the termination of his employment, Plaintiff Brian Easter initiated this action against his employer, Defendants Beacon Tri-State Staffing, Inc. and C*MAC Transportation, LLC, alleging violations of the Family Medical Leave Act ("FMLA") and asserting a claim of Age Discrimination. (*See* Doc. 1.) On October 17, 2017, Plaintiff amended his Complaint to add a claim of Associational Disability Discrimination under Ohio law. (*See* Doc. 29.) Plaintiff later stipulated to the dismissal of his Age Discrimination claim, and the Court

1

dismissed his Associational Disability Discrimination claim on summary judgment, leaving the parties to resolve the remaining FMLA claims during settlement negotiations.

Although the parties were able to resolve the claims underlying this case, they were unable to agree on the amount of attorneys' fees and costs that should be awarded to Plaintiff. The parties, therefore, fashioned their settlement agreement to allow the Court to award an appropriate fee amount within a range of $137,500 at the bottom end and $337,500 at the top end. The matter is now ripe for resolution.

## III. LAW & ANALYSIS

The starting point for a determination of reasonable attorneys' fees and costs is the Lodestar method: "multiplying the number of hours reasonably spent on the case by an attorney times a reasonable hourly rate." *Miller v. Food Concepts Int'l, LP*, 2017 WL 524 7542, *2 (S.D. Ohio Nov. 13, 2017) (Marbley, J.) (quoting *Moore v. Freeman*, 355 F.3d 558, 565 (6th Cir. 2004)). The resulting amount may then "be adjusted upwards or downwards, as the district court finds necessary under the circumstances of the particular case." *Id.* (quoting *Moore*, 355 F.3d at 565. The party seeking a fee award must submit evidence supporting the hours worked and the rates claimed. *Id.*

Here, Plaintiff attests that he has accumulated a total of $345,415,62 in attorneys' fees and costs. He, therefore, requests that the Court award an amount of $337,500, which is the ceiling of the parties' agreed-upon range. Defendants, on the other hand, maintain that an appropriate amount would be the floor of the agreed-upon range -- $137,500.

### A. Reasonable Hourly Rates

The first step in the Lodestar analysis is to determine whether Plaintiff's counsel has proffered a reasonable hourly billing rate for their services. Though Defendants do not challenge

the reasonableness of the rates requested here, the Court addresses them briefly below. In doing so, the Court is guided by the following instructions:

> In determining a reasonable hourly rate, the appropriate rate . . . is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation. The market rate is the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record.

*Miller*, 2017 WL 5247542, at *3.

1. Attorney Jason Starling

Attorney Jason Starling seeks a billable rate of $350 per hour. Mr. Starling has over ten years of labor and employment litigation experience, having graduated from Indiana University's Maurer School of Law in 2007, and having spent the entirety of his career at the law firms of Baker & Hostetler, LLP; Porter, Wright, Morris, & Arthur, LLP; and Willis, Spangler, Starling. Notably, an Ohio state court previously found that Mr. Starling's billing rate of $350 per hour was reasonable considering his education, skill, and experience. (*See* Doc. 125-7.) This Court will agree. *See Miller*, 2017 WL 5247542, at *3 ("In making its determination, the court may consider a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience from handling similar cases.") (internal quotations and citation omitted).

2. Attorney John Camillus

Attorney John Camillus seeks a billable rate of $425 per hour. Mr. Camillus has over seventeen years of legal experience, having graduated from Yale Law School in 2002, clerked for Chief Judge R. Guy Cole, Jr. of the United States Court of Appeals for the Sixth Circuit, and practiced at two prominent law firms, Jones Day and Cooper & Elliot, LLC, before forming his own practice in 2010. Based on Mr. Camillus' breadth of experience, the Court finds his standard billing rate of $425 per hour more than reasonable. *See Hadix v. Johnson*, 65 F.3d 532, 536 (6th

Cir. 1995) ("In the case of private attorneys . . . where an attorney requesting fees has well-defined billing rates, those rates can be used to help calculate a reasonable rate for a fee award.").

### 3. Paralegals Alynnah Satterfield and Phoebe Heffron

Finally, Paralegals Alynnah Satterfield and Phoebe Heffron seek a billable rate of $150 per hour. Both Ms. Satterfield and Ms. Heffron are college graduates and have completed paralegal training programs. Recognizing that paralegals are an integral part of any legal team, the Court finds their billable rate of $150 per hour reasonable. *See Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1020 n.4 (N.D. Ohio 1997) ("Paralegal time, like attorney time, is measured in comparison to the market rate, if the prevailing practice in the area is to bill paralegal time separately at market rates.").

## B. Hours Reasonably Expended

Having concluded that Plaintiff's counsel's billing rates are reasonable, the next step is to determine the reasonableness of the hours expended in this case. In determining the hours reasonably expended, "[t]he question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief requested. Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Miller*, 2017 WL 5247542, at *6 (quoting *Wooldridge v. Marlene Indus.*, 898 F.2d 1169, 1173 (6th Cir. 1990)). Attorneys seeking fees must "maintain billing records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended on the case" and "should exercise billing judgment with respect to hours worked." *Id.* (quoting *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008)).

Importantly, "[t]he Court need not achieve auditing perfection." *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)) (internal quotations omitted). Indeed, "[t]here is no precise rule or formula for making these determinations." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). Additionally, in lieu of line-by-line reductions, the Court "may implement an across-the-board reduction by a certain percentage" and may "take into account [its] overall sense of a suit, and . . . use estimates in calculating and allocating an attorney's time." *Id.* (internal quotations and citations omitted).

Here, Plaintiff seeks renumeration in the following amount:

| Timekeeper | Rate | Hours | Total Fees |
|---|---|---|---|
| Attorney Jason Starling | $350 per hour | 860.20 hours | $301,070 |
| Attorney John Camillus | $425 per hour | 38.40 hours | $16,320 |
| Paralegal Alynnah Satterfield | $150 per hour | 7.90 hours | $1,185 |
| Paralegal Phoebe Heffron | $150 per hour | 8.00 hours | $1,200 |
| Litigation Costs | | | $25,640.62 |
| **TOTAL:** | | | **$345,415.62** |

Defendants present four reasons why the Court should not award the above-requested amount: (1) Plaintiff advanced unsupportable claims in his Complaint; (2) Plaintiff only recovered part of the relief originally sought; (3) Plaintiff's counsel pursued a litigation strategy designed to generate exorbitant billing hours; and (4) Plaintiff did not prevail on any claim in his Complaint, as this case resulted in a settlement. The Court will address each of Defendants' arguments, in turn, below.

1. Unsupportable Claims

Defendants' first contention is that Plaintiff unnecessarily prolonged this case with unreasonable settlement demands based, in part, on advancing unmeritorious claims. Defendants specifically refer to Plaintiff's Age Discrimination claim, which was later dismissed voluntarily, and his Associational Disability Discrimination claim, which the Court dismissed on summary judgment. Defendants maintain that absent pursuing these claims, Plaintiff would have had a more realistic starting point for settlement negotiations, and the case could have settled much earlier. The Court, however, finds Defendants' arguments unpersuasive.

To begin, Plaintiff attests that he brought the claim for Age Discrimination based on how he learned his employment had been terminated. According to Plaintiff, he learned he was fired by finding a new, younger employee sitting in his truck when he arrived at work. It was not until after he had the opportunity to conduct discovery that Plaintiff shifted his theory of liability away from Age Discrimination and to violations of the FMLA. Consistent with that, Plaintiff notified Defendants that he would no longer be pursuing his Age Discrimination claim. (*See* Doc. 129-2.) This was done prior to the parties submitting cross-motions for summary judgment. The Court, therefore, cannot conclude that Plaintiff advanced this claim in bad faith.

Nor can the Court conclude that Plaintiff acted in bad faith by pursuing the Associational Discrimination claim. Although the Court dismissed this claim on summary judgment, the arguments that Plaintiff raised in support were far from frivolous. Accordingly, the Court finds no justification to reduce Plaintiff's attorneys' fees and costs award on this basis.

2. Partial Success

Next, Defendants argue that Plaintiff's attorneys' fees award should be reduced to account for the fact that he failed on two of the four claims enumerated in his Complaint. The Court disagrees.

"[C]alculating the Lodestar amount does not end the inquiry on an attorney fee application because an award based on the total number of hours reasonably expended on the litigation might result in an excessive amount if the claimant achieved only partial success." *Robinson v. Hilton Hosp., Inc.*, 2008 WL 11455040, *6 (S.D. Ohio Sept. 30, 2008) (citing *Imwalle*, 515 F.3d at 553). But to be clear, "[t]he Lodestar amount may be adjusted downward if plaintiff achieved only partial success *and* the claims on which plaintiff failed to prevail were unrelated to the claims on which she succeeded, *or* where plaintiff failed to achieve a degree of success that justifies the fees requested." *Id.* (citing *Hensley*, 461 461 U.S. at 435) (emphasis added). "When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorneys['] fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." *Imwalle*, 515 F.3d at 554 (quoting *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1169 (6th Cir. 1996)); *see Robinson*, 2008 WL 11455040, at *6 ("Where plaintiff has presented distinctly different claims for relief based on different facts and legal theories, fees are not awarded for work on an unsuccessful claim.").

Here, Plaintiff's claims are interrelated and share a common set of facts, such that it would be improper to reduce his attorneys' fees award by the amount it cost to litigate his dismissed claims. Plaintiff's FMLA and Associational Disability Discrimination claims were all predicated on the theory that he was fired for taking time off from work to care for his terminally-ill father. Certainly, the same evidence used to support the FMLA claims was used to support his

7

Associational Disability claim. And, with respect to his Age Discrimination claim, Plaintiff stipulated to its dismissal before the parties engaged in and incurred the costs of extensive litigation.

The Court also finds that Plaintiff achieved a degree of success that justifies his attorneys' fees award. Plaintiff reached a settlement agreement for the alleged violations of the FMLA that compensated him near the top end of what he would have been able to recover at trial. Accordingly, the Court finds no justification to reduce Plaintiff's attorneys' fees and costs award on this basis. *See Robinson*, 2008 WL 11455040, at *8 ("There is no precise rule or formula for making a determination as to the degree of success obtained by a prevailing party. Such a determination is left to the discretion of the trial court.") (internal citations omitted).

### 3. Litigation Strategy

Defendants' third argument for reducing Plaintiff's attorneys' fees award is that counsel for Plaintiff took unnecessary depositions and submitted excessively long briefs that ran up the cost of litigation. Defendants maintain that Plaintiff deposed eleven witnesses, several of whom provided duplicative information or information of limited value. Defendants, however, only point to the deposition of Raymond Switala as an example. *See United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotations and citation omitted). Additionally, Defendants note that Plaintiff submitted an 80-page opposition brief, including 359 pages of exhibits, in response to Defendants' Motions for Summary Judgment.

Here, the Court finds that Defendants' arguments are misplaced. First, regarding the deposition of Raymond Switala, Plaintiff explains that Mr. Switala was the supervisor to whom Plaintiff reported his call-off on August 16, 2020. Considering whether Plaintiff provided

Defendants adequate notice of an FMLA-qualifying event was a key issue in this case, Mr. Switala's testimony was relevant to the litigation. Second, with respect to the length of Plaintiff's opposition brief, it is unclear why this would signal excessive, unnecessary effort on Plaintiff's part. To the contrary, Plaintiff had to oppose two Motions for Summary Judgment, that raised separate and distinct arguments, in a single brief. It should, therefore, be expected that Plaintiff's response would exceed the typical length of an opposition brief. Accordingly, the Court finds no justification to reduce Plaintiff's attorneys' fees and costs award on this basis.

### 4. Settlement vs. Victory

Finally, Defendants argue that, because this case resulted in a settlement or compromise, it would be improper to award Plaintiff nearly one-hundred percent of his attorneys' fees and costs. This argument, however, ignores the fact that the parties agreed to limit the possible range of attorneys' fees that Plaintiff could recover in light of the settlement agreement. In other words, Defendants' concerns have already been taken into account. Accordingly, the Court finds no justification to reduce Plaintiff's attorneys' fees and costs award on this basis.

In sum, Defendants have not presented any arguments justifying an across-the-board reduction of Plaintiff's attorneys' fees and costs award. And, after reviewing the documents submitted in this case, the Court finds sufficient evidence to support the rates Plaintiff's counsel claims and the hours they represent to have worked. The Court, therefore, awards Plaintiff a total of $337,500 in attorneys' fees and costs.

## IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Plaintiff's Motion for Attorneys' Fees and Costs and awards an amount of **$337,500**.

**IT IS SO ORDERED.**

                                             **/s/ Algenon L. Marbley**
                                             **ALGENON L. MARBLEY**
                                             **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: January 27, 2020**